[Perkins, Livingston & Post v. Brierfield Iron & Coal Co.]

# Perkins, Livingston & Post *v.* Brierfield Iron & Coal Co.

*Bill in Equity by Judgment Creditors, to set aside Mortgage, or have it declared General Assignment, and for Sale of Property.*

1. *Who are necessary parties to bill; general rule.*—The general rule is, that all persons who are interested, legally or beneficially, in the subject-matter of the suit, whose rights or interests are affected, or sought to be concluded by the decree, are necessary parties to the bill; and persons who are shown to have once had an interest, which would be materially affected by the decree, must be brought in as parties, unless it is also shown that their interest has ceased, or has become vested in some other person who is a party.

2. *Same; mortgagees, and assignees.*—Junior mortgagees are necessary parties to a bill filed by judgment creditors, seeking to set aside a prior mortgage, or to have it declared a general assignment, asserting a superior lien on the property conveyed, and asking to have it sold for the satisfaction of their judgments; and an averment that another person, who is made a party, claims to be the owner of the junior mortgage, does not obviate the necessity of bringing in the mortgagee himself, as the holder of the legal title.

3. *Lien of judgment and execution.*—Under our statutes, a judgment is not a lien on the defendant's property, real or personal, but a lien is created by the issue of an execution and its delivery to the sheriff (Code, § 3210); which lien continues, so long as executions are regularly issued without the lapse of an entire term; but, when the lien has been once lost, by the lapse of an entire term without an execution, it can not be revived, so as to give it continuous force as if there had been no chasm, though a new lien may be acquired by a subsequent execution.

4. *Failure to issue execution for ten years.*—When ten years have elapsed without the issue of an execution, the plaintiff is not entitled to an execution without a revivor of the judgment (Code, §§ 3173-74), though an execution so issued may be only voidable only; and the judgment being inoperative and dormant unless revived, the plaintiff stands, in a court of equity, as a creditor by simple contract only.

5. *Lien of judgments of Federal courts.*—In the absence of legislation by Congress, the lien of judgments rendered by the Federal courts depends on State laws; and by express provision (U. S. Rev. Stat., § 967), the lien of such judgments ceases "in the same manner, and at like periods," as the judgments of the State courts.

APPEAL from the Chancery Court of Bibb.

Heard before the Hon. THOMAS COBBS.

The bill in this case was filed on the 25th September, 1883, by Perkins, Livingston & Post, late partners carrying on a mercantile business in the city of New York, and J. F. Johnston, as complainants, claiming to be judgment creditors of the Brierfield Iron Works Company, a private corporation organ-

ized under the laws of this State, against the said corporation, and several other persons who claimed interests in property which had belonged to it; and sought, principally, to have the property subjected by sale to the satisfaction of the complainants' judgments. The said corporation was organized under an act of the General Assembly of Alabama, approved January 28th, 1867, entitled "An act to incorporate the Brierfield Iron Works Company of the county of Bibb."—Sess. Acts 1866-7, pp. 229-31. Said corporation became indebted, soon after its organization, to said Perkins, Livingston & Post, then doing business as partners in New York; and an action being brought on this indebtedness, in the District Court of the United States at Montgomery, they recovered a judgment against said corporation, on the 30th May, 1870, for $2,360.96. An execution was issued on this judgment, on the 19th September, 1870, and was levied on certain lands belonging to the defendant; but, for reasons unknown to complainants, no sale was made under the levy, and no other execution was ever levied on the judgment. In March, 1867, said corporation became indebted to the First National Bank of Selma, which afterwards suspended and ceased to do business, C. Cadle being appointed receiver of its property and assets; and said Cadle, as such receiver, recovered a judgment against said corporation, in the District Court of the United States at Montgomery, on the 26th May, 1869, for $7,501.77. An execution was issued on this judgment, on the 18th September, 1869, which was levied on the same lands; but no sale was made, for want of time. An *alias* execution was issued on the 17th October, 1870, and placed in the hands of the marshal, but no levy was made under it; and a *pluries* execution was issued on the 2d December, 1882, which was returned by the marshal, May 7th, 1883, "No property found." J. F. Johnston, one of the complainants, purchased this judgment, and was the owner of it when the bill was filed; and it was alleged that each of said judgments was wholly unsatisfied.

On the 1st January, 1867, before the organization of said corporation, but in anticipation thereof, F. S. Lyon and others, the principal corporators, borrowed $22,400, "for the benefit of said corporation thereafter to be organized," from John T. Walton, and executed to him their promissory note for the amount, dated January 1st, 1867, and payable twelve months after date. On the 19th March, 1867, after the organization of the corporation, and after the creation of the debts held by the complainants, said corporation executed its mortgage to said Walton, "wherein and whereby it conveyed to said Walton substantially all the property owned by it, real, personal and mixed, to secure the payment of said note for $22,400." As

to this mortgage the bill alleged, "that there was no indulgence given, no consideration paid, no benefit acquired by said corporation, and no detriment sustained by said Walton in the acquirement of said mortgage ; that said mortgage was signed by said corporation by its president, but was not attested, nor acknowledged, and was filed for record in this condition, to-wit, on the 25th March, 1867, and was recorded ; that afterwards, as orators are advised, to-wit, in the month of April, 1867, it was acknowledged by said president of said corporation, before a notary public, but was never again filed for record or recorded after such acknowledgment; that orators acquired their said judgments against said corporation without any notice of said Walton mortgage, and neither they, nor any one of them, nor the said C. Cadle, had any notice of the execution, acknowledgment, delivery or record of said Walton mortgage, until within the present year, when they were informed thereof."

In April, 1867, as the bill further averred, said corporation executed and delivered to E. A. Glover a mortgage on all of its said lands, to secure the payment of its promissory note for $10,666.66 ; which mortgage was duly acknowledged and recorded, " and John C. Webb now claims to own said note and mortgage." In May, 1867, said corporation executed and delivered another mortgage on all of its lands, to John Collins, to secure the payment of a note for $14,504.57 ; which said mortgage was duly acknowledged and recorded, " and Charles W. Collins now claims to own the said note and mortgage." In June, 1867, said corporation executed and delivered another mortgage on all of said lands, to W. B. Inge, to secure the payment of a promissory note for $5,000 ; which said mortgage was duly acknowledged and recorded, and the executors of the last will and testament of said W. B. Inge " now claim to own said note and mortgage." Each of these mortgages, the bill further alleged, " conveyed substantially all the property then owned and possessed by said corporation, and each was, under the laws of this State, as to the creditors of said corporation, a general assignment."

On the 25th February, 1870, as the bill further averred, Lyon, Whitfield, James Crawford and others, stockholders in said corporation, purchased said note and mortgage from Walton, and took an assignment thereof to said Crawford for their joint benefit ; and Crawford thereupon signed an instrument of writing, which specified the amounts paid by each of the parties, and stipulated that the property was held by him, in trust for their benefit, in proportion to the sum paid by each respectively. Copies of these instruments were made exhibits to the bill. In November, 1874, J. F. Griffin, one of the stock-

holders and beneficial owners of the Walton note and mortgage, filed a bill in chancery against the corporation, the other stockholders, and the owners of the other mortgages above mentioned, asking a foreclosure of the several mortgages and a sale of the property; but, at the instance of said Lyon and the other holders of the Walton note and mortgage, who represented that the corporation was about to execute a deed of trust on all of its property for the benefit of its creditors, this suit was not prosecuted to a hearing. Accordingly, on the 30th November, 1874, said corporation executed a deed conveying substantially all of its property to E. W. Pettus and J. T. Jones as trustees, and " providing substantially for the payment of all its debts," including the complainants' judgments, " but not undertaking to establish the priorities of the several creditors as between themselves;" and this trust was accepted by said J. T. Jones, one of the trustees therein named. The complainants were never consulted about the execution of this deed, and they had no notice of it, except as they may be charged with notice by its registration; and the deed has never been foreclosed.

In March, 1876, said Crawford advertised the lands for sale under the power contained in the mortgage to Walton; and at the sale made by him, by agreement among all the beneficial owners of said note and mortgage, the lands were bid in by Lyon and Browder, two of said beneficial owners, in trust for themselves and the others, and were conveyed to them by said Crawford. Afterwards, during the year 1880, Lyon and Browder entered into an agreement with C. C. Huckabee, " which was, substantially, that he was to effect a sale of the said lands and property for the sum of $50,000, and, in the event he succeeded in doing so, they were to pay him $5,000;" and in January, 1881, Huckabee having negotiated with W. D. Carter and A. K. Sheppard for the sale of a part of said lands at the price of $50,000, Lyon and Browder conveyed all the lands to him by quit-claim deed, and he conveyed a part to said Carter and Sheppard, receiving $50,000 in money and notes, which he paid over and delivered to said Lyon and Browder, retaining $5,000 for his compensation. Afterwards, Huckabee sold and conveyed the residue of said lands to the Brierfield Iron and Coal Company, another corporation organized under the laws of Alabama; and said corporation subsequently bought from Carter and Sheppard the lands conveyed to them by said Huckabee. Of the agreed purchase-money of the lands, said corporation owed $20,000 for the lands bought from Huckabee, and $50,000 for the residue.

The bill charged that the mortgage to Walton was without consideration, and void as against the complainants; that the sale and conveyance by Crawford to Lyon and Browder was

also void, and passed no interest as against the complainants, and that each of the other mortgages was subordinate to the complainants' rights as judgment creditors. The two corporations, Huckabee, Pettus and Jones as trustees, Charles W. Collins, John C. Webb, and the executors of the last will and testament of W. B. Inge, deceased, were made defendants to the bill; and the prayer was expressed in these words: "Your orators pray that, on the hearing of this cause, your honor will cause an account to be taken of what is severally due them from said Brierfield Iron Works Company, and, in default of payment thereof, will decree that the said Walton mortgage was and is void as to them, and that the equity of your orators is superior to all others, and that the said lands be sold to satisfy their said debts; or, if your orators are mistaken in regard to the validity of said Walton mortgage, and as to said sale by Crawford, that your honor will decree that said mortgage to Walton was and is a general assignment, and will cause said lands to be sold and distributed in this court among the creditors of said company according to their several equities; or, if your honor shall think that your orators are not entitled to the relief above prayed, that your honor will decree that they have a right to subject to the satisfaction of their debts the amount still due from said Brierfield Coal and Iron Company, as herein above alleged, and direct the same to be paid into this hon. court, and distributed under its direction;" and the general prayer, for other and further relief, was added.

A decree *pro confesso* was entered against Huckabee, but was afterwards set aside; and he then filed a demurrer to the bill, assigning several causes of demurrer, which were in substance, these: 1st, the want of necessary parties, because neither Carter, nor Walton, nor Glover, nor John Collins was made a party; 2d, that complainants' judgments are dormant, and no execution could lawfully issue upon them; 3d, that the complainants do not show that they are judgment creditors. The chancellor sustained the demurrer on all the grounds assigned, except as to the necessity of making Walton a party; and his decree is now assigned as error by the complainants.

JOHNSTON & NELSON, for appellants.

PETTUS & PETTUS, *contra*.  (No briefs on file.)

CLOPTON, J.—We find in the record a demurrer to the bill, filed February 6th, 1884, by the Brierfield Iron and Coal Company and Caswell C. Huckabee; but, as it appears that, at that time, there was a decree *pro confesso* against Huckabee, which was subsequently set aside, and thereafter a separate de-

murrer filed by him, and as the decree from which the appeal is taken appears to have been on the separate demurrer, we shall restrict our consideration to the grounds of the demurrer filed after the decree *pro confesso* was set aside; assuming that the first was abandoned, or not insisted on, having been irregularly filed.

The purposes of the bill seem to be three-fold: 1st, to have the mortgage to Walton declared void as against complainants, and the property of the Brierfield Iron and Coal Company sold for the satisfaction of their judgments, as having a prior lien; 2d, failing in this, to have the mortgage to Walton declared a general assignment, and the proceeds of the property distributed according to the equities of the parties; 3d, to enforce the deed of trust to Pettus and Jones, and have the property sold, the assets marshalled, and the priorities of the parties determined. And failing in these main purposes, the bill seeks to have the amounts alleged to be due to Carter and Huckabee by the company, for the purchase-money of the lands on a re-sale, appropriated to the payment of the judgments of complainants. No question as to the character of the bill is raised by the demurrer.

It is a general rule, that all persons who are legally or beneficially interested in the subject-matter of the suit—who have a legal or equitable estate, and whose rights and interests are to be affected, or sought to be concluded by the decree—are necessary parties to the bill. It is manifest from the allegations of the bill, that Glover, John Collins and Carter are, each, either legally or beneficially interested in the subject-matter of the suit, and that their rights and interests would be materially affected by a decree in favor of complainants. The bill shows that, after the making of the mortgage to Walton, the company executed, in April, 1867, a mortgage to Glover, and another mortgage, in May, 1867, to John Collins, all three covering the same property, and conveying substantially all the property of the company; that, subsequently to the execution of the deed of trust to Pettus and Jones, the property was sold under the Walton mortgage, and purchased by the then beneficial owners of the mortgage, who conveyed to Huckabee for the purpose of enabling him to effect a sale of the property; that Huckabee afterwards sold a part of the lands to Carter and Sheppard, who re-sold to the company, for which the company is still indebted to Carter and Huckabee respectively. It is thus shown that Glover and Collins are mortgagees, invested with whatever right and title the company held, at the time their mortgages were executed, to the property sought to be subjected to a lien in favor of complainants, claimed to be superior, or to be sold and the proceeds distributed among the creditors according to

[Perkins, Livingston & Post v. Brierfield Iron & Coal Co.]

their equities, under the operation of the Walton mortgage as a general assignment; and that the complainants claim to have the amount due by the company to Carter appropriated to the satisfaction of their judgments. It is true, no special relief is prayed against Carter, *eo nomine*; but the bill alleges the facts, on which such application of the money may be claimed under the general prayer.

When the allegations of the bill show that, at some prior time, persons who are not made parties, had an interest which would be materially affected by the decree, its continuance is presumed; and it is incumbent on the complainant, if he would be relieved of the necessity to make them parties, to show by appropriate averments a cessation of the interest. It is not necessary, as counsel insist, for the demurrant to show that such person has never parted with his interest, in order to avail himself of the objection of a want of necessary parties. By alleging the interest or facts, that make it apparent, the complainants make a *prima facie* case against themselves. The averment that some other person, who is made a party, claims to be the owner of the mortgage, is not sufficient. The person having the legal title, though he may not have a beneficial interest, must be made a party, so that the legal title may be bound by the decree. When a bill is brought by the assignee of a judgment or *chose in action*, the assignor, or other person having the legal title, must be made a party, and no decree will be rendered in his absence.—*Lawson v. Ala. Warehouse Co.*, 73 Ala. 289. To dispense with the necessity of making a mortgagee of real estate a party, the bill must show that his interest and title to the land has passed out of him, by an instrument containing apt and appropriate words of conveyance; and it will not be seriously contended that the money claimed by Carter can be taken from him, and applied to the demands of complainants, without giving him an opportunity to contest, and show his right to the money.

It is well settled by the decisions of this court, that, under our statutes, a judgment has no lien on the property of the defendant, real or personal.—*Dane v. McArthur*, 57 Ala. 448; *Carlisle v. Goodwin*, 68 Ala. 137. The issue of an execution, and its delivery to the sheriff, are necessary to create a lien, which continues until there occurs the lapse of an entire term without another having been issued.—Code, § 3210. Where the lien, which was originated by the issue of an execution, is lost, by suffering an entire term to lapse without the issue of another, it requires a new execution to create a lien, which, "in such case, will be a new lien, not a revivor of the last lien"—a new lien, commencing from the time the new execution is received by the sheriff.—*Gamble v. Fowler*, 58 Ala. 576.

[Perkins, Livingston & Post v. Brierfield Iron & Coal Co.]

The levy of the last execution on lands does not obviate the effect of a failure to have successive issues, as required by the statute. An execution lien on land constitutes no property or right in the land itself. Speaking of a judgment lien, it has been said: "It only confers a right to levy on the same, to the exclusion of other adverse interests subsequent to the judgment; and when the levy is actually made on the same, the title of the creditor for this purpose relates back to the time of the judgment, to cut out intermediate incumbrances. Subject to this charge, the defendant may convey the land. A judgment creditor has no *jus in re*, but a mere power to make his general lien effectual by following up the steps of the law. What law? The law which authorizes the judgment, and the issuing of the process, through which means the judgment may be satisfied. A failure to do this, releases the charge on the property."—*Massingill v. Downs*, 7 How. 760. A judgment, when an entire term has elapsed without the issue of an execution, is necessarily a judgment without a lien, until a new execution has been issued..

Section 3173 of the Code provides: "When execution has been issued on a judgment within a year after its rendition, and has not been returned satisfied, another execution may be issued at any time within ten years after the test of the last, without a revival of the judgment." And by section 3174: "If ten years have elapsed from the rendition of the judgment, without the issue of an execution, or if ten years have elapsed since the date of the last execution, the judgment must be presumed to be satisfied, and the burden of proving that it is not satisfied is cast on the plaintiff." At the common law, when the plaintiff delayed suing out execution beyond a year, the presumption arose that the judgment had been satisfied, or from some supervening cause it was not to have effect; and the plaintiff was not entitled to execution as of right, but was compelled to resort to an action on the judgment, or to the writ of *scire facias* to revive it, and call the defendant to show cause why execution should not issue.—Bing. on Judg. & Ex. 119, Our statute extends the time to ten years, before the presumption of satisfaction arises. It may be conceded, that an execution, issued after the expiration of ten years, is not void, but voidable at the instance of the defendants. The operation and effect of the statutes are, to deny the plaintiff the right to sue out an execution without a revival of the judgment.— *Van Cleave v. Haworth*, 5 Ala. 188; *Shackleford v. Miller*, 18 Ala. 675. When a judgment becomes inoperative, and an execution can not be legally and regularly issued thereon, and so continues until revived by proper proceeding, it is a dormant judgment.—Freeman on Judg. § 442.

The lien of judgments rendered in the Federal courts is created by, and depends on the State laws, where Congress has not legislated on the subject. "In those States where the judgment, or the execution of a State court, creates a lien only in the county in which the judgment is entered, it has not been doubted that a similar proceeding in the Circuit Court of the United States would create a lien to the extent of its jurisdiction. This has been the practical construction of the powers of the courts of the United States, whether the lien was held to be created by the issuing of process, or by express statute." *Massingill v. Downs, supra*; *Ward v. Chamberlain*, 2 Blatch. 430. And by section 967 of the Revised Statutes, judgments rendered in a Circuit Court within any State "cease to be liens on real estate or chattels real, in the same manner, and at like periods as the judgments of the courts of such States cease by law to be liens thereon." No execution was issued on the judgments of complainants, for more than ten years after the date of the last execution; and on the foregoing principles, they are dormant, and without a lien.

The remaining cause of demurrer is, that the complainants do not show they are judgment creditors. The bill alleges, that the judgments mentioned therein were rendered by a court of competent jurisdiction, and are unsatisfied. The antecedent causes of action are merged in them, and they are conclusive of all pre-existing defenses. They are judgments, though dormant, and the complainants are dormant judgment creditors. But, as, under the rules we have stated, the complainants can obtain only the same relief to which simple-contract creditors, on the same facts, and under the same circumstances, would be entitled, the ruling of the court on this cause of demurrer is error without injury.

Other important questions have been elaborately and ably argued by counsel. As, however, they are not raised by the demurrer, and as they may be, in some respects, differently presented on a final hearing, a consideration of them will be premature.

The decree is affirmed, and the cause remanded, with directions to allow complainants, if they desire, to amend the bill, by making the necessary parties, and in such other respects as may be necessary and proper.