KIRCHER, Respondent, vs. PEDERSON, Appellant.

*February 6—February 24, 1903.*

*Counties: Unlawful appropriation: Restraining payment: Taxpayers' action: Parties: Pleading.*

1. A county board appropriated, as a charity to a claimant whose claim had been disallowed, a certain sum on condition that her attorneys file an agreement that they should not receive more than $25 thereof, and that the claimant file a release. In an action by a taxpayer to restrain payment of the money, *held:*

    (1) It not appearing that the claimant's attorneys have any lien upon the claim, their interests will not be directly affected by the suit and they are not necessary parties.

    (2) The·claimant is a necessary party because her rights will be directly affected; but the complaint need not state a cause of action against her by alleging that she will accept the appropriation.

2. After public money has been paid to a private person in pursuance of an unlawful appropriation by a county board, the county, but not a taxpayer, can sue for the recovery thereof. The remedy of the taxpayer is by injunction to prevent the payment.

3. An appropriation by a county board, to a person whose claim had been disallowed, of a sum of money "as a charity" and not as a settlement or compromise of a doubtful claim, is illegal, and payment may be restrained at the suit of a taxpayer.

APPEAL from an order of the circuit court for St. Croix county: E. W. HELMS, Circuit Judge. *Affirmed.*

Action to restrain the county treasurer of St. Croix county from paying money claimed to have been illegally appropriated by the county board.. Plaintiff commenced this action as a taxpayer on behalf of himself and all others similarly

situated.   In addition to stating the facts respecting his interest in the subject-matter of the suit, and those necessary to show that each of the defendants was a necessary or proper party to the litigation,—including the county board, the chairman of such board, the county treasurer and county clerk,—the following matters were, by appropriate allegations, pleaded:

At a meeting of the county board of St. Croix county in the year of 1901, a claim by *Mary Pederson* against such county was presented for consideration by the board.   The claim was based on the following statement therein contained: Claimant, on November 9, 1900, was in the employ of the sheriff of St. Croix county as a servant.   She resided at his official residence on the grounds owned by the county and used as a location for its court-house, sheriff's residence and county jail.   There was at such time a ditch thereon about ten feet deep immediately in front of the outside door at the south side of said residence.   It was constructed by authority of a committee of the county board.   It was left open and entirely unguarded on the night of said November 9th.   Claimant, while about her regular duties, and without knowledge of the existence of the ditch, and wholly through the carelessness of those responsible for the situation, fell into the ditch and was thereby severely injured.   The nature of the injury was described.   The damages were laid at $5,000.   The claim was duly verified.   It was considered by the board and formally disallowed.   The next day, without such action having been reconsidered, the board adopted a resolution as follows:

"Believing that the best interest of the county be obtained by avoiding litigation, also that justice tempered with charity regardless of legal technicalities shall prevail, therefore be it,

"*Resolved* that the county treasurer be instructed and is hereby authorized to pay out of the county treasury the sum of $500 to *Mary Pederson* for injuries sustained by falling

into an uncovered excavation on the courthouse grounds after dark on the 9th day of November, 1900,

"*Provided* that her legal representative shall first file with the county treasurer a legal agreement that he and his associate attorney shall not receive a sum aggregating more than $25 from *Mary Pederson* in this case, also that the said *Mary Pederson* through her attorney shall furnish in writing to the county treasurer a legal release to St. Croix county for all damages sustained by reason of the above mentioned injuries, thus relieving St. Croix county of any further liability in the above matters.

"This shall be considered as charity rather than as a settlement of a legal liability of St. Croix county."

The chairman of the county board and the county clerk threaten to draw and issue a county order in compliance with such resolution, directing the treasurer to pay the appropriation of $500. The county treasurer threatens to pay the order if one shall be presented to him, and unless enjoined by the court such threats will be carried out. A permanent injunction was prayed for against the doing of the acts threatened, and temporary relief was asked preserving the *status quo* pending the litigation.

Defendant *Mary Pederson,* by her attorney, demurred to the complaint, first, for defect of parties defendant in that it appeared upon the face of the complaint that the claimant's attorneys were interested in the subject of the litigation and would be affected by the result; second, that the complaint does not state facts sufficient to constitute a cause of action. The demurrer was overruled.

For the appellant there was a brief by *E. B. Kinney* and *A. J. Kinney,* and oral argument by *A. J. Kinney.*

*John W. Bashford,* for the respondent.

MARSHALL, J. Did the action of the county board, in paternally guarding the claimant against the danger of being compelled to pay her attorneys more than $25 for their services in presenting her claim to the county board, make them

necessary parties to this suit? So far as appears, they had no lien upon appellant's claim. If they had any, the action of the county board was not taken with a view of protecting the county therefrom. The sole idea, it appears, was that since the proposition was to make a donation to the claimant because of her misfortune it was proper to tie up the fund so that the benefit thereof would inure to the unfortunate woman herself, except the amount of $25. The appropriation was made solely to the claimant. It did not recognize any liability, legal or equitable, or in any way intend to create an interest for, or to make a gift to, the attorneys. The appropriation was solely to the claimant conditioned that she should not pay more than $25 of the money to her attorneys. It is difficult to see how the attorneys thereby obtained any claim against the county which this litigation, if successful, could directly affect. True, the suit may result in prejudicing their prospects of obtaining pay for their services, but no different than persons are commonly prejudiced indirectly by preventing their debtors from collecting money due them. It was never supposed that such circumstance made such persons necessary parties to judicial proceedings involving such prevention.

Counsel cite in support of their proposition the well-known rule that one who will be directly affected by a decree in equity is a necessary party to the suit. *Douglas Co. v. Walbridge,* 38 Wis. 179. That does not apply here. Appellant's attorneys were not directly affected by the suit. The effect upon them, if any, was indirect, since they have no claim upon the county. Our statute, sec. 2603, Stats. 1898, defines necessary parties to a suit as those whose interests will be directly affected by a complete determination of the controversy forming the subject of the litigation. In *Castle v. Madison,* 113 Wis. 346, 89 N. W. 156, this court held, in effect, that the rule of the Code, as regards suits of this nature, is but a concise statement of the common-law rule in

equity.   Indispensable parties, it was said, are those persons
having a property interest in the controversy that will be di-
rectly affected by the decree or the enforcement thereof.   The
court quoted with approval the decision of the supreme
court of the United States in *California v. Southern Pac. Co.*
157 U. S. 229, 15 Sup. Ct. 591, as fairly voicing the scope of
the Code on the subject.   The federal court said, in substance,
persons having an interest in the controversy which will be
directly affected by a decision as broad as the scope of the
litigation, either by reason of being bound by the result
thereof or being so circumstanced that the decree cannot be
enforced without so invading their rights as to require further
litigation before the ultimate relief sought can be fully at-
tained, are necessary parties.   It is easily seen that the rule
stated does not fit this case.   A decree in this suit, so far as
appears, will not affect, directly or indirectly, any right of
appellant's attorneys against her, and they have none against
the county.   As we have said, their claim will remain the
same regardless of what the decree in this suit may be.   True,
as indicated, it may impair the ability of the appellant to
pay them, but that is not the effect which is the test of whether
they are necessary parties to the suit.

To support the challenge to the complaint for insufficiency,
it is said that it fails to state a cause of action against appel-
lant because it does not allege facts to show that she will ac-
cept the appropriation on the terms laid down.   Respondent's
cause of action is not against appellant.   It is against the
officers who, it is alleged, will, if not restrained by the court,
illegally deplete the funds of the county.   If there be a cause
of action as to them under the rule already stated, there can
be no question but that appellant is a necessary party because
her rights will be directly affected by the decree.

It is said no ground is shown for equitable relief because
plaintiff has an action at law; that he could, in case the
money was paid, sue the appellant, and the county treasurer

also upon his bond.   Not so.   The proposition is too infirm
to merit serious discussion.   Respondent would stand then as
he does now, with no cause of action whatever of his own to
recover from the appellant or the county officers.   Public of-
ficers upon whom devolve the duty of disbursing public
funds may rightly refuse to obey legislative commands au-
thorizing or requiring the payment thereof illegally.   If such
officers, instead of asserting the right of the public, which it
is their duty to do, stand, or there is danger of their stand-
ing, upon the mere forms of law as a justification for disburs-
ing public funds, a taxpayer has no power to interfere and
protect his indirect interest by enforcing the right of the pub-
lic, except by a suit in equity to enforce the cause of com-
plaint of the corporation.   If he is not able to act before
the money has passed from the public treasury to illegal
private possession, such money nevertheless will remain im-
pressed with the public ownership.   The title thereto will by
no means change merely by being illegally taken from the
possession of the proper custodian thereof and passed over
to one who has no right thereto.   As this court has had oc-
casion to remark, a person cannot rest secure in the enjoy-
ment of money merely upon the ground that he has obtained
possession of it from the public treasury.   If he does not ob-
tain the possession rightfully the courts will furnish the in-
jured taxpayers a remedy where the mischief cannot be other-
wise remedied, if they seasonably move in the matter.   That
has been, probably, as thoroughly entrenched in the juris-
prudence of this state as any principle can well be.   Upon
public money coming to the wrongful private possession of a
person, a cause of action accrues to the public corporation to
recover it, but not to any private individual, although he may
be indirectly interested as a taxpayer.   The corporation may
sue at law to remedy the wrong inflicted upon it, but the tax-
payer must necessarily sue in equity or have no relief at all
where public officers will not perform their duty.   When the

taxpayer sues the court does not recognize him as standing for any direct interest of his own,. but as one representing indirect interests, and because thereof, permitted to vindicate the right of the corporation. *Frederick v. Douglas Co.* 96 Wis. 411, 71 N. W. 798; *Land, L. & L. Co. v. McIntyre,* 100 Wis. 245, 75 N. W. 964; *Webster v. Douglas Co.* 102 Wis. 181, 77 N. W. 885, 78 N. W. 451; *Endion Imp. Co. v. Evening Telegram Co.* 104 Wis. 432, 80 N. W. 732; *Quaw v. Paff,* 98 Wis. 586, 74 N. W. 369; *Egaard v. Dahlke,* 109 Wis. 366, 85 N. W. 369; *Northern T. Co. v. Snyder,* 113 Wis. 516, 89 N. W. 460. The law on this subject has been so clearly laid down in the cases cited that we cannot hope to make the same plainer or give to the valuable principle involved greater significance by anything more that can be said. If there be no legitimate foundation for the appropriation there can be no reasonable doubt on the facts alleged that it was competent for respondent, in a taxpayers' suit, to prevent its payment. The complaint shows, by the usual allegations, that unless the court intervenes the money will be taken from the treasury under the forms of law and given to appellant. The attitude of the county officers in making the appropriation sufficiently indicates that they are hostile to those who desire to prevent the threatened payment. That makes a clear case in favor of respondent if the appropriation was illegal.

On the question of whether the appropriation was illegal we need not spend much time. It is not necessary to go into the subject of whether the claim of plaintiff disclosed reasonable probability that a legal liability existed in her favor from the county, because the appropriation was not made to turn on any such question. It was made distinctly as a donation to the appellant. Her claim was disallowed. The action disallowing it was not reconsidered. The appropriation was not made to settle a controversy deemed not entirely closed because of the disallowance, the way being open to continue it

by an appeal from the action of the board to the circuit court. Any idea of that kind is distinctly negatived by the language of the resolution. The board declared, in effect, that they dealt with the subject of the claim as one entirely closed, so far as any legal liability of the county was concerned; that no claim was intended to be dignified by their action as sufficiently in doubt to stand as a basis for voting the money as a compromise thereof. They declared that the appropriation was made as a mere gift, having no basis to rest upon but that of charity for the unfortunate claimant. It may be admitted that if the claim had been deemed doubtful and the appropriation made as a compromise thereof, the doubt, if reasonable in any view of it from the standpoint of the members of the county board, would have constituted a legitimate basis for their action. *Washburn Co. v. Thompson,* 99 Wis. 589, 75 N. W. 309. In such circumstances the appropriation would have been the result of an application to the case in hand of the legal discretion which the law vested in the board. When they laid aside considerations of doubt as to whether the county was or was not liable to appellant, they had no more right to appropriate its money to her than to appropriate it to any one else or convert the same to their personal use. Their action was wholly without legal authority. The exact nature of the appropriation, as to the basis thereof, was not left by the board in any manner of doubt. They declared, "This shall be considered as charity rather than as a settlement of a legal liability of St. Croix county."

*By the Court.*—The order of the circuit court is affirmed.