148 So. 116

### TURNIPSEED et al. v. BLAN, State Treasurer.

### 3 Div. 47.

Supreme Court of Alabama.
April 27, 1933.

Rushton, Crenshaw & Rushton, of Montgomery, for appellants.

Thos. E. Knight, Jr., Atty. Gen., and John H. Peach, Legal Advisor to the Governor, of Sheffield, for appellee.

FOSTER, Justice.

The bill of complaint describes the warrants, whose payment out of funds raised or set apart for school purposes for the tax year beginning October 1, 1932, is sought to be enjoined, as having been issued in favor of various school boards and educational, eleemosynary, and correctional institutions in various amounts, and were acquired and are now held by a bank in the city of New York. Some of them were issued under an Act of August 25, 1927 (Gen. Acts 1927, p. 442). The first eleven sections of that act make continuing appropriations to the state board of education for various purposes. Some of them are for current expenses, some for libraries, and some for rural school buildings. Section 12 makes continuing appropriations for the quadrennium to the Alabama College, Alabama Polytechnic Institute, and the University of Alabama, without specifying the uses to be made by such institutions. Section 13 makes continuing appropriations for the quadrennium for the normal schools to be used for capital investment in grounds, buildings, and equipment, and for payment of outstanding debts incurred for capital outlay (dealt with in In re Acts 1927, p. 442,

Making Appropriations for State Normal Schools, 220 Ala. 539, 126 So. 161). Section 14 makes such appropriations for capital investment for Alabama College, Alabama Polytechnic Institute, and University of Alabama separately. So that a large part of such appropriations are for permanent capital investment. Such capital investments were for the most part limited to the quadrennium, and those for operations continued, as a rule, without limitation as to time.

The last section of the act (No. 31) provides that the several appropriations shall be payable out of the special trust fund created and set apart for educational purposes by section 2 of the General Revenue Act (Gen. Acts 1927, p. 139); and that, in event it be insufficient to cover such appropriations, the balance shall be payable out of any other funds in the treasury not otherwise appropriated. Some of the warrants here in question, all of which we will call certificated warrants, were drawn and are payable pursuant to the requirements of that provision of the act.

The general public school fund is provided for by section 260 of the Constitution, consisting principally of the special annual tax of 30 cents on each $100 of taxable property, with provision that it shall be increased from time to time as the necessity therefor and the condition of the treasury and resources of the state may justify. This public school fund, save that which shall be supplemented from the general fund, shall be apportioned to the several counties in proportion to the number of school children of school age therein—section 256, Constitution; Opinions of the Justices, 215 Ala. 524, 111 So. 312—and all is so apportioned by section 242, School Code. The county boards then exercise their discretion in its further distribution. State v. Board of Education of Russell County, 214 Ala. 620, 108 So. 588.

In addition to such public school fund, the Legislature of 1927, in its General Revenue Act, § 2 (Gen. Acts 1927, p. 139), levied certain special taxes (within the resources of the state, as provided by section 260, Constitution), and by subdivision 2-K of that act constituted such revenue the "Alabama Special Educational Trust Fund," and directed that same be kept separate and apart from all other funds in the state treasury, and paid out of appropriations from such fund for educational purposes. The trust fund was also specially supplemented by appropriations from the general fund for that purpose for the year 1932, in the sum of $1,500,000, and for 1933 and 1934 in the sum of $2,000,000 each. The act which thus supplements such fund provides that the additional sums "shall be expended under and in accordance with the terms and provisions of" the Appropriation Act of 1927, to which we have re-

ferred as that by authority of which the certificated warrants were issued.

■ The bill alleges that the state treasurer, unless enjoined, will pay those warrants out of the public school fund raised under authority of section 260, Constitution, as well as out of the trust fund.

Since section 256 of the Constitution, supplemented by section 242, School Code, is specific that the "public school fund" shall be apportioned to the several counties in proportion to the number of children of school age therein, it can mean nothing else but that the whole of such fund shall be so apportioned each year, and that there can be no part of the same left at the end of any fiscal year not so disposed of, and which may be otherwise used. So that all of such fund must be so apportioned for the fiscal year beginning October 1, 1932, and all of it paid out for use in the several counties as there specified, and no part of it, under the express mandate of the Constitution, can be used to pay the certificated warrants or any of them. Some of the certificated warrants are drawn on that fund. To that extent we think the bill shows a right to injunctive relief.

■ But in respect to the use of trust funds received during the year beginning October 1, 1932, waiving any other question, it is sufficient for the purposes of this case to say merely that the bill alleges that for the year beginning October 1, 1932, there will be no more money in such trust fund than will be needed to pay the current appropriations out of it for that year, and that the schools largely dependent upon such appropriations of it for current operations are being forced to suspend, since the funds appropriated for that purpose are being withheld to permit payment of those warrants, and that they will be so applied unless enjoined by this court. The injunction sought relates only to school funds, general and special, for the present fiscal year.

That situation was not involved in the inquiry which the Governor submitted to the justices and answered by us, reported in In re Acts 1927, p. 442, Making Appropriations for State Normal Schools, 220 Ala. 539, 126 So. 161. That inquiry was predicated upon section 13 of the Appropriation Act of 1927, to which we have referred. It made an annual appropriation for permanent investment by the normal schools continuing through 1930. The specific inquiry was in substance whether it would be a violation of section 213 of the Constitution if the normal schools, which are authorized by law to borrow money, shall borrow an amount substantially equal to the sum of such annual appropriations, pledging the warrants thus authorized by law, and make the investment of it all at once rather than to make separate investments each year. Obviously it could not thus violate section 213. We did not say directly nor indirectly that such debt so contracted by the schools, or the warrants issued under the act of 1927, which secured it, should be paid in priority to current appropriations of the fund for the years subsequent to the last of those in which such appropriation for them specifically applied. We were not asked a question whose answer tended to express an opinion on that subject.

We think that the substantial equity of the bill is well sustained by the facts alleged, and that the injunction should be granted if the facts are as alleged, unless there is something else lacking to give the court the right to do so.

■ Appellee argues that a taxpayer does not possess the right to enjoin state officers in this respect.

We have recognized the right of a taxpayer to maintain a suit in equity to restrain an officer of a city or county from disbursing funds without statutory authority or under an unconstitutional statute. Travis v. First National Bank of Evergreen, 210 Ala. 620, 98 So. 890; Allen v. Intendant & Councilmen of La Fayette, 89 Ala. 641, 8 So. 30, 9 L. R. A. 497. Some states refuse to concede such right of action when the purpose is to enjoin a state officer from thus illegally disbursing state funds. But a great majority of the states which have considered the subject have applied such right of suit, though it relates to a state officer. This is said to be based upon the necessity for prompt action to prevent irremediable public injury. The taxpayer bears the same relation to state funds as to municipal funds, except in degree, a point which should not control. 58 A. L. R. 588 et seq., note.

■ Appellee also argues that the decree sustaining his demurrer should be affirmed because of a want of necessary parties, which is made the basis of special grounds.

The bill does not allege the name of the holder of the certificated warrants, but its allegations do not show that complainant is ignorant of its name, referred to as a bank in New York. No reason is given why it is not made a party. The bill would have the court to enjoin their payment out of the trust fund, as well as the general school fund, during the year beginning October 1, 1932, which is the present fiscal year. The claim to such injunction is the assertion that the current appropriations of that fund for this year will exhaust all the money received or to be received during the year for its use; also that, though the general school fund raised under section 260 of the Constitution must be disposed of as directed in the Constitution, and though it has no more money than is otherwise appropriated for this fiscal

year, the treasurer will use its moneys in the payment of the certificated warrants unless enjoined. So that the holder of such warrants has the right to be heard as to the truth of those facts before the treasurer is enjoined from so using the money.

The general rule is that persons whose rights are directly and necessarily affected by the decree, and are materially interested in the subject-matter of a suit, in equity, must be made parties. Travelers' Fire Ins. Co. v. Young, 225 Ala. 671, 145 So. 140; Ex parte Wilkinson, 220 Ala. 529, 535, 126 So. 102; Hodge v. Joy, 207 Ala. 198 (24), 92 So. 171; Perkins v. Brierfield Iron & Coal Co., 77 Ala. 403; Wilkinson v. May, 69 Ala. 33.

In the case of Baisden v. City of Greenville, 215 Ala. 512, 111 So. 2, there was no demurrer to the bill on that ground, though it was somewhat similar to this one in respect to parties. This court first held that they were necessary parties, and, though there was no demurrer, complainant could not proceed without them. But on rehearing the court said that the question is not presented on that appeal, and therefore disapproved the holdings on first hearing.

In Travis v. First National Bank, 210 Ala. 620, 98 So. 890, 892, the bill sought an injunction of the misappropriation of county funds to the payment of interest on certain outstanding bonds, until a judgment or decree is otherwise rendered by a court of competent jurisdiction on behalf of one or more of the bondholders. The bill alleged that they were negotiable, payable to bearer, not registered, and that the present owners are unknown to complainants, and cannot be ascertained by diligent search and inquiry. It was held that the "right of complainants should not be delayed, and they should not be embarrassed in enforcing it, and the funds of the county illegally paid out because the owners of the bonds are unknown and cannot be brought into court. Their identity may be kept unknown indefinitely."

We adhere to that rule as sound and applicable under the circumstances of that case. But such are not the facts here.

In a suit in Colorado of a somewhat similar character, it was held that the holder of the claim whose payment is sought to be enjoined is a necessary party. Stong v. Milliken, 76 Colo. 515, 233 P. 154.

We here copy the following notes in 32 Corpus Juris, 300:

"Wisconsin—Kircher v. Pederson, 117 Wis. 68, 93 N. W. 813.

"[a] Reasons for rule.—(1) The rights of the payee will be directly affected by the decree.—Kircher v. Pederson, 117 Wis. 68, 93 N. W. 813. (2) 'He who is deprived of his property, or of what he claims to be his, is entitled to be heard, and no judgment can be rendered depriving him of that which he claims to be his, without bringing him before the court which is asked to determine his rights. * * * It is true that in an action between some individuals a court, in deciding matters which affect them, may establish principles and decide questions which affect others also, but neither this court, nor any court, can legally decide that an action which has for its direct object the forfeiture of the property or rights of an individual is maintainable without bringing before it as a party the individual at whom and at whose right and property such action is directly aimed.'—Smith v. Crissey, 4 N. Y. Civ. Proc. 433, 13 Abb. N. C. 149, 434, 66 How. Pr. 112.

"[b] Thus (1) where a county has contracted with a party to construct a courthouse and jail, and a taxpayer seeks to enjoin the board of county commissioners from paying such contractor for work and labor performed and to be performed under such contract, the contractor is an indispensable party to the suit, and, where such contractor was not made a party, the court properly dismissed the petition.—Walrath v. Valencia County, 18 N. M. 101, 134 P. 204. (2) To a suit in equity to enjoin the treasurer of the United States from paying out any money of the United States or the District of Columbia to a private charitable organization, under a contract between the commissioners of the District of Columbia and such corporation, the commissioners and the corporation are necessary parties.—Roberts v. Bradfield, 12 App. D. C. 453 [aff. 175 U. S. 291, 20 S. Ct. 121, 44 L. Ed. 168].

"[c] The holders of municipal bonds are indispensable parties to a suit to enjoin payment of interest thereon by the mayor and council of the municipality which issued them.—Hope v. Gainesville, 72 Ga. 246.

"[d] Fund arising from sale of public lands. —Where an injunction is sought against the state treasurer to prevent him from paying over to certain railroad companies a fund arising from the sale of certain public lands, the railroad companies are the real persons interested in the resistance of the prayer of the petition, and no final judgment can be rendered until they are brought in.—State v. Anderson, 5 Kan. 90.

" 'An injunction cannot be granted affecting the rights and interests of parties who have no opportunity of being heard, and who are not secured by such bond as would compensate them for the injury and loss they might sustain in case the writ was improperly issued.'—Patterson v. Yuba County, 12 Cal. 105.

"Rule applied.—Where a county has contracted with a bridge company to issue and deliver county bonds and warrants in payment for a public bridge, and taxpayers seek to enjoin the issue of the bonds, the bridge

company is a necessary party to the action.—King v. Throckmorton County Com'rs Ct., 10 Tex. Civ. A. 114, 30 S. W. 257."

In the case of Cherokee Nation v. Hitchcock, 187 U. S. 294, 23 S. Ct. 115, 47 L. Ed. 183, cited by appellant, the question was the legal power of the Secretary of Interior to make certain proposed contracts. The contracts had not been made. We think that the gravamen of the opinion is, as said, that all persons with whom the secretary may contract were not indispensable parties to determine the question of whether the statute conferred authority to make such a contract. No such prospective contractor had an interest more definite than any other person. We assume that, if the contract had been made, there would be a different case.

In the case of Dixon Township v. Board of Com'rs, 25 Kan. 519, as in the Cherokee Nation Case, supra, no rights had accrued, but it was an injunction to prevent a subscription to the capital stock of a railroad company. The railroad company had acquired no rights directly and materially affected by the decree, nor other material interest in the subject-matter of the suit, within the purview of the rule in our cases.

In Littler v. Jayne, 124 Ill. 123, 16 N. E. 374, no point was made nor considered by the court, as we read the opinion, based upon the absence of necessary parties.

In Carruthers v. City of Astoria, 72 Or. 505, 143 P. 899, 1106, the opinion recites that the suit was to enjoin the enforcement of an ordinance authorizing the payment of warrants issued against a prospective special fund from the general fund; and that whatever benefit they may anticipate is a mere gratuity and not a legal right, and that such rights are not affected by the suit.

In Kellogg v. School District, 13 Okl. 285, 74 P. 110, it is said that the action cannot affect the legal rights of the warrant holder, and he must seek his legal remedy at the proper time, and that he may resort to his proper action for protection.

In Hoffman v. Board of Com'rs of Gallatin County, 18 Mont. 224, 44 P. 973, 975, the suit was to enjoin county commissioners from issuing bonds to fund an illegal indebtedness to a bank, which held a county warrant. The bank had no interest in the proposed bonds, and they had not been issued, and the court said that it could not see how it was necessary to make the bank a party, for, if it had any rights, it was not prevented by that suit from enforcing them.

Such cases relied on by appellant do not conflict in the main with our analysis of the present situation holding that the bank in the city of New York has a direct and immediate interest in the subject-matter of this suit. Its rights are not merely inchoate and prospective, but they are such that an adverse decree in this case judicially determines its right to collect its warrants out of certain funds of the state which accrue during the present fiscal year.

■ Appellant also justifies the absence of the bank in New York as a party on the ground that it is a nonresident. It may be a sufficient answer to this claim to say that the bill as constituted does not show that constructive service would be necessary. The New York bank may have an agent in Alabama duly qualified to be served so as to constitute personal service. Or such bank may, if the opportunity is given, make a voluntary personal appearance. Moreover, an unwilling nonresident, on whom personal service is not available, may be made respondent and notice by publication given. Section 6535, Code.

While no personal decree can be rendered against him, nor one which declares his personal obligations or rights, he may be bound to the extent of controlling the disposition of property or effects situated in Alabama, in which he may be interested. Exchange Nat. Bank v. Clement, 109 Ala. 270, 19 So. 814; Long v. Clark, 201 Ala. 454, 78 So. 832; McKleroy v. Dishman, 225 Ala. 131, 142 So. 41, 42 (9).

Reliance is had on rule 18. That rule permits the court to proceed in the absence of necessary nonresident parties in the discretion of the court, and without prejudice to their rights.

■■ The chancery court sustained demurrers to the bill. Some of the grounds were predicated on the absence of the bank as a party. In sustaining the demurrer, the court will be presumed on appeal to have held that in its discretion the cause should not proceed without this party. If so, we think the discretion is well sustained. No temporary injunction is sought; notice by publication could give it an opportunity to appear and make defense on final hearing; no one would be prejudiced thereby. We see no reason for not sustaining the chancery court in thus exercising its discretion.

It may not be amiss to say that, if the payment of the funds were impending, and would doubtless be made before a hearing, and before notice to the bank, and thereby place the money beyond the power of the court, a temporary injunction could easily prevent such result. Such is not this case.

The rule also avers that the decree must be without prejudice to such absent nonresident. But, if a permanent injunction has more than temporary effect, it necessarily is prejudicial to the bank. If it is without prejudice to the bank, it is no more than temporary; but it is sought to be permanent, yet without prejudice—an impossible result.

■ In addition to the certificated warrants, the bill alleges that there are outstanding warrants chargeable to educational funds aggregating $10,000,000 held by various county and city boards of education of the state, and that on account of this great number it is impracticable to make them parties. Under such circumstances, the statutes and rules of practice do not permit the cause to proceed without some of such parties sufficient to represent their interests. Rule 19, Chancery Practice; sections 5701, 5709, 6537, 9515, Code.

■ However, the bill is insufficient in the description of such uncertificated warrants, not showing the particular school fund (general or trust) on which drawn, nor the appropriations which justify their issuance; nor when issued and payable, or any other detail or description.

■ We do not think that there exist any of the elements which would estop the state superintendent of education, who is alleged to be a taxpayer, and the other taxpayer complainants from pursuing this remedy. The very nature of the right, as we understand it, is contrary to any element of estoppel. No position is shown to have been heretofore taken by them which would prevent the enforcement of the warrants exactly as issued out of the funds which are appropriated for their payment. Complainants are not seeking to maintain a position which is contrary to the true status of the warrants as claims on the treasury, and the bill does not show that they have ever acted upon a contrary assumption.

We do not think that other questions need comment.

Because of the absence of the bank in New York as a party, we think the decree of the circuit court sustaining the demurrer was without error, and it is affirmed.

Affirmed.

ANDERSON, C. J., and GARDNER and BROWN, JJ., concur.

THOMAS and KNIGHT, JJ., concur in the result, and agree with the opinion that the demurrer was properly sustained on account of the absence of necessary parties, but do not wish to express an opinion on the other features discussed, since it is not necessary now to do so, and the absent parties should be heard on that subject, before doing so.

BOULDIN, J., does not concur in the result, and dissents from the opinion to the extent of holding that the demurrer was properly sustained on account of the absence of necessary parties, and on that subject he expresses his own views, but he concurs in other features of the opinion.

BOULDIN, Justice (dissenting).

I concur in the opinion, except in so far as it holds the nonresident bank should be made a party.

In my opinion, chancery rule 18 expressly covers the case. Under the rule, where the protection of parties before the court so demands, the cause may proceed without "necessary parties," if nonresident; that is, without parties who would be necessary, if within the jurisdiction of the court.

That rule provides, as must needs be so, that the nonresident shall not be concluded, but still have his day in court, if he so elects, for a hearing de novo. The state would be quite impotent to protect her citizens if the courts could not deal with parties under her jurisdiction because nonresidents have rights in the subject-matter. Travis v. First Nat. Bank of Evergreen, 210 Ala. 620, 98 So. 890.

Nor do I think the New York bank should be made a party by constructive notice. This is a proceeding inter partes, not one in which the court has jurisdiction of the res, in the sense of jurisdiction by proceedings in rem.

No decree on constructive service can adjudicate the bank's contractual rights with the state of Alabama.

Certainly the bank should be permitted to intervene, if it desires so to do. The name of the bank is known as of course to the treasurer and other officers of the state. We will not assume they have failed in their duty to advise the bank of this litigation.

The situation, more fully disclosed in the companion case of Jewell C. Hall v. S. H. Blan, State Treasurer (Ala. Sup.) in 148 So. 601, seems to be this: A bank in another state has furnished money at the instance of the Governor of Alabama, to be used in keeping open our public schools, pay for school buildings, provide for the insane hospital, the school for the deaf and blind, etc., taking as security warrants issued for these purposes pursuant to a solemn act of our Legislature, and by the regular officers chosen for the purpose by the people of the state. An unprecedented economic condition has caused or accentuated a great shortage of revenues. The state has by legislation put an end to further accumulation of deficits, or floating debts. Now comes a suit to prevent the depletion of current school funds of a later year in order to meet these warrants. Shall the bank put itself in the position of a litigant, or shall it wait upon Alabama to meet a most solemn moral obligation by such means, even a constitutional amendment, as the wisdom, patriotism, and justice of the state shall advise?

I think the bank should be left to its own election whether it will become a party to this suit, as it may be advised.

I therefore respectfully dissent.