GRIFFIS, J.,
 

 for the court.
 

 ¶ 1. Mary Guy appeals the denial of workers’ compensation benefits for her injuries resulting from a stroke. The administrative law judge determined that Guy failed to meet her burden of proving that she suffered a stroke or that the stroke was related to her employment. The decision of the administrative law judge was adopted by the Mississippi Workers’ Compensation Commission, and the Commission’s order was affirmed by the Scott County Circuit Court. On appeal, Guy claims that the decision of the Commission is not supported by substantial evidence and should be reversed. Finding error, we reverse the judgment of the circuit court and remand the case to the Commission for a determination of benefits.
 

 FACTS
 

 ¶ 2. Guy was an employee of B.C. Rogers Processor, Inc., for approximately forty years. She began on the assembly line processing chicken breasts and later became a line supervisor. Her duties as a supervisor included setting up and preparing the production line each morning, supervising the employees working on the line, discharging employees when necessary, reporting employee injuries, and filling in for employees who did not report to work. Guy testified that it was very stressful trying to keep the line moving on schedule as there were always one or more employees who did not report to work. Her position required her to be on her feet the entire shift as she was only able to sit during her lunch break.
 

 ¶ 3. Guy’s last day of work at B.C. Rogers was Thursday, September 2, 2000. She worked her full shift without any unusual incidents and left work around 3:30 p.m. She took a vacation day on Friday before the Labor Day holiday. On Saturday, Guy began to experience pain in her right arm and right leg. She reported to the hospital on Sunday, September 5, 2000, complaining of pain on the right side of her neck. Guy claims to have suffered a stroke on September 5th; however, the medical evidence is in conflict on this issue.
 

 ¶ 4. Guy informed her supervisor that she had suffered a stroke and would not be returning to work. She continued to file her medical bills under the employer’s insurance plan until the employer filed for bankruptcy on November 19, 2001. Guy then filed her claim for workers’ compensation after the employer’s medical insurance was cancelled due to the bankruptcy proceedings. As a result of the employer’s insolvency, the Mississippi Workers’ Compensation Self-Insurer Guaranty Association (“Guaranty Association”) assumed the defense of Guy’s workers’ compensation claim.
 

 ¶ 5. The administrative law judge found that the medical evidence was conflicting as to whether Guy actually had a stroke and, if so, whether the stroke was work related. Relying more heavily on the testimony by a specialist than that of Guy’s general practitioner, the administrative
 
 *32
 
 law judge held that Guy failed to meet her burden of proving a work-related injury. The Commission adopted this holding, and it was affirmed by the circuit court. Guy now appeals claiming that the specialist’s testimony was improperly relied upon because it was not based on substantial evidence.
 

 STANDARD OF REVIEW
 

 ¶ 6. This Court’s scope of review in workers’ compensation cases is limited to a determination of whether the decision of the Commission is supported by substantial evidence.
 
 Westmoreland v. Landmark Furniture, Inc.,
 
 752 So.2d 444, 447(¶ 7) (Miss.Ct.App.1999). The Commission sits as the ultimate finder of fact; its findings are subject to normal, deferential standards upon review.
 
 Natchez Equip. Co. v. Gibbs,
 
 623 So.2d 270, 273 (Miss.1993). We will only reverse the Commission’s rulings when its findings of fact are unsupported by substantial evidence, matters of law are clearly erroneous, or the decision was arbitrary and capricious.
 
 Hale v. Ruleville Health Care Ctr.,
 
 687 So.2d 1221, 1225 (Miss.1997);
 
 Westmoreland,
 
 752 So.2d at 448(¶ 8).
 

 ¶ 7. “[A] finding is clearly erroneous when ... the reviewing court on the entire evidence is left with the definite and firm conviction ■ that a mistake has been made by the Commission in its findings of fact and in its application of the Act.”
 
 J.R. Logging v. Halford,
 
 765 So.2d 580, 583(¶ 13) (Miss.Ct.App.2000). “Where no evidence or only a scintilla of evidence supports a Worker’s Compensation Commission decision, this Court does not hesitate to reverse.”
 
 Foamex Prods., Inc. v. Simons,
 
 822 So.2d 1050, 1053(¶ 11) (Miss.Ct.App.2002) (quoting
 
 Universal Mfg. Co. v. Barlow,
 
 260 So.2d 827, 831 (Miss.1972)).
 

 ANALYSIS
 

 Whether the Commission’s decision to rely cm the opinion of the medical specialist over the opinion of Guy’s general practitioner was supported by substantial evidence.
 

 ¶ 8. It is clear from the Commission’s order that the Commission chose to rely on the medical testimony provided by a neurologist over the medical opinion of Guy’s general practitioner. Guy argues that the opinion of the specialist should only be given greater weight than the opinion of the general practitioner when both physicians are equally informed of the relevant facts. She contends that the specialist offered an opinion without having full knowledge of the factual foundation of her claim; thus, the decision of the Commission to rely on the specialist’s opinion was not based on substantial evidence and should be reversed. In response, Guaranty Association asserts that the Commission properly gave greater weight to the testimony of the specialist as it is the role of the Commission to determine the credibility and weight of the evidence. Additionally, Guaranty Association argues that the evidence fails to support a causal connection between Guy’s alleged stroke and her employment; thus, the decision of the Commission to deny Guy’s claim for workers’ compensation benefits should be affirmed.
 

 ¶ 9. In
 
 Hedge v. Leggett & Platt, Inc.,
 
 641 So.2d 9, 13 (Miss.1994), the supreme court stated that the burden of proof in a workers’ compensation claim is as follows:
 

 In a workers’ compensation case, the claimant bears the burden of proving by a “fair preponderance of the evidence” each element of the claim. These elements are: (1) an accidental injury, (2) arising out of and in the course of employment, and (3) a causal connection
 
 *33
 
 between the injury and the death or claimed disability.
 

 But, once the claimant makes out a pri-ma facie case of disability, the burden of proof shifts to the employer.
 

 (Internal citations omitted).
 

 ¶ 10. The Commission determined that Guy had not met this burden of proving a work-related injury. This conclusion was reached after a review of the conflicting medical evidence presented through the medical records of four physicians and the depositions of two of those physicians. The Commission’s decision stated the following:
 

 [Tjhere are two conflicts in the medical evidence: whether Ms. Guy had a stroke and, if so, whether the stroke was work-related. Of those two issues, the second is more important. In other words, assuming that Ms. Guy had a stroke, she must still prove that the stroke was causally connected with her work.
 

 The Commission determined that, even assuming that Guy had a stroke, the evidence did not prove that the stroke was related to her employment. We now set forth the conflicting medical evidence that was presented to the Commission.
 

 ¶ 11. Dr. Howard Clark testified by deposition and through his medical records. He has treated Guy for over forty years as her general practitioner. At the time of the stroke, Guy was under Dr. Clark’s care for acute phlebitis of the right leg. He would occasionally advise her to take time off from work due to this condition. Dr. Clark treated Guy on September 5, 2000, when Guy reported to the emergency room with complaints of a headache and pain in the right side of her neck. Dr. Clark testified that Guy had high blood pressure, a decrease in strength on her right side, a deficiency in the closing of her right eyelid, and a decreased facial sensation on the right side. The results of the CT scan performed on the following day were normal. However, due to Guy’s symptoms, Dr. Clark diagnosed Guy’s condition as a stroke on the left side of the brain.
 

 ¶ 12. Dr. Clark testified that hypertension can be caused by heredity, lifestyle, physical work, and stress. His opinion was that Guy’s stress at work was a cause of her hypertension which, in turn, was a cause of her stroke. Thus, he determined that the stroke was work related, stating:
 

 The work at the plant, being a foreman, looking after eight to ten people doing a specific job, having to be sure that they perform their job efficiently, and having to do their jobs at times that they were off the line, is very physical and emotionally stressful and surely contributes to hypertension.
 

 Dr. Clark then concluded that Guy had reached maximum medical improvement and that she could not return to her former job.
 

 ¶ 13. The Commission next considered the medical records provided by Dr. Edward E. Rigdon, a vascular surgeon who examined Guy on a referral from Dr. Clark. Guy was first seen by Dr. Rigdon on May 17, 2001. She complained of numbness in her arms and legs. Dr. Rig-don conducted an ultrasound of Guy’s arteries, but found no atherosclerotic disease or stenosis. He suggested that Guy be referred to a neurologist. Guy was again seen by Dr. Rigdon on February 20, 2004. Then, she complained of numbness in her right anterior thigh. Dr. Rigdon concluded that this symptom was not related to vascular disease and again recommended that she see a neurologist.
 

 ¶ 14. On July 3, 2001, Guy was examined by Dr. Parveen Athar, a neurologist, on a referral from Dr. Clark. Guy complained of numbness in her right arm and
 
 *34
 
 right leg. Dr. Athar found that Guy suffered from mild carpal tunnel syndrome in the right wrist. On March 17, 2003, Guy returned to Dr. Athar for a follow-up visit. Dr. Athar ordered a MRI, which was performed on March 24, 2003. The MRI showed the possibility of a recent infarct on the right side of the brain, which was inconsistent with Guy’s complaints of numbness on the right side of her body. Dr. Athar read the MRI again on April 14, 2003, and found a small infarct on the left side of the brain. However, Dr. Athar concluded that she could not connect Guy’s symptoms to her employment.
 

 ¶ 15. Lastly, the Commission considered the medical records and deposition testimony of Dr. Mitchell J. Myers, a neurologist to whom Guy was referred by Guaranty Association. Guy was first examined by Dr. Myers on November 13, 2002. In preparation for this examination, Dr. Myers reviewed the medical records of Dr. Clark and Dr. Athar. These records included Guy’s admittance to the emergency room on September 5, 2000, the date of alleged injury relevant to Guy’s present claim. It was Dr. Myers’s opinion that the symptoms Guy presented — pain in the right side of her neck and a headache— were not consistent with Dr. Clark’s diagnosis of a stroke. He testified that those symptoms “would be a very unusual presentation of a stroke.” Further, “[t]he pain [resulting from a stroke] is usually a vague, a dull, a burning, not an acute sudden severe pain localized to the right side of the neck. That would be a very unexpected symptom with [a] left[-]sided stroke.”
 

 ¶ 16. During Dr. Myers’s examination of Guy, he found that her motor exam was normal, and he did not find any weakness on one side of the body. He concluded that her symptoms were more consistent with her history of carpal tunnel syndrome than with a stroke. When asked his opinion regarding a diagnosis for Guy, Dr. Myers stated:
 

 Well, there was simply no concrete evidence of the kind of neurological deficits that would make one sure that there had been a stroke. Certainly there could have been a stroke, but I was unable to come away with the findings that would tell me that that had definitely occurred.
 

 Dr. Myers opined that “there was not a relationship between what happened at work and the possibility of this stroke.”
 

 ¶ 17. Dr. Myers saw Guy again on November 11, 2003. Dr. Myers reviewed the MRI that was performed by Dr. Athar on March 24, 2003; however, he determined that the MRI did not show that Guy suffered a stroke, stating:
 

 I did not see a definite stroke on the scan. I saw the area that the radiologist from Scott Regional noted in his report where he was of the belief that there had been a stroke. I did not agree with that necessarily. I saw that — how that might have been — how that impression might have been made, but I did not think the scans were of high enough quality to be certain about it. There was artifact in the area; there was machine error in the area of that diagnosis. It simply wasn’t clear. It certainly could have been a stroke. I just could not be certain about it.
 

 If 18. Dr. Myers further testified that there would be no way to date the old infarct seen by the radiologist; thus, there was no way to know within a reasonable degree of medical probability whether it occurred on September 5, 2000.
 

 ¶ 19. After considering the evidence presented by the four medical experts, the Commission stated: “Here the medical evidence is in conflict as to whether she indeed experienced a stroke around [September 5, 2000,] and whether any such
 
 *35
 
 stroke was causally connected with her employment.” Dr. Clark, Guy’s treating physician, opined that Guy had a stroke, and the stroke was work related. Dr. Rigdon made no explicit findings as to the possible stroke. Dr. Athar found that Guy had suffered a stroke, but she did not relate the stroke to Guy’s employment. Finally, Dr. Myers, a specialist in neurology, opined that there was no conclusive evidence of a stroke, and even if Guy suffered a stroke, it was not work related.
 

 ¶20. The Commission stated that the true question in this case was not whether Guy suffered a stroke but, assuming that she did have a stroke, whether she proved that it was work related. As to this question, one expert, Dr. Clark, said that the stroke was work related, and another expert, Dr. Myers, said that it was not work related. The Commission found that Dr. Myers was better suited to answer this question because of his specialized training and experience in neurology. Accordingly, the Commission found that Guy failed to meet her burden of proof by showing a causal connection between her stroke and her employment.
 

 ¶21. The Commission supported its decision by quoting the supreme court’s decision in
 
 Raytheon Aerospace Support Services v. Miller,
 
 861 So.2d 380 (Miss.2003). There, the supreme court held that the Commission is the ultimate fact-finder when conflicting medical opinions exist, stating: “Where medical expert testimony is concerned, this Court has held that whenever the expert evidence is conflicting, the Court will affirm the Commission whether the award is for or against the claimant.”
 
 Id.
 
 at 336(¶ 13) (citing
 
 Kersh v. Greenville Sheet Metal Works,
 
 192 So.2d 266, 268 (Miss.1966)). As here, the Commission in
 
 Miller
 
 chose to accept the testimony of the specialist over a general practitioner.
 
 Id.
 
 Citing to the extremely limited standard of review afforded to the appellate courts, the supreme court affirmed the decision of the Commission.
 
 Id.
 
 at 335, 338 (¶¶ 9, 27).
 

 ¶ 22. However, as noted above, Guy had the burden to prove both that an injury occurred and that the injury was causally connected to her employment.
 
 See Hedge,
 
 641 So.2d at 14. She did so in the form of Dr. Clark’s testimony. He clearly stated that Guy suffered a stroke that was brought on by the many stresses of her employment. Then, the burden of proof shifted to Guaranty Association to rebut such proof.
 
 See id.
 
 at 14-15. Guaranty Association’s rebuttal was the testimony of Dr. Myers.
 

 ¶ 23. Guy argues that this Court should not defer to the Commission despite our limited scope of review because she claims that the testimony of Dr. Myers was not supported by substantial evidence. Guy contends that Dr. Myers’s opinion that the possible stroke was not work related was not based on substantial evidence because Dr. Myers did not have any knowledge of the stress that Guy had experienced at work. Further, she argues that his opinion amounted to mere speculation because he could not state for certain that Guy had not suffered a stroke. We agree.
 

 ¶ 24. Although this Court must defer to the Commission on issues of the weight and credibility to be given to the testimony and evidence, the Commission’s ultimate decision must be based on substantial evidence.
 
 Hale,
 
 687 So.2d at 1225. Substantial evidence requires more than mere conjecture or possibility.
 
 Hedge,
 
 641 So.2d at 15. Here, we do not And that Dr. Myers’s testimony is supported by the necessary substantial evidence required to uphold the Commission’s decision.
 

 ¶ 25. “When the testimony is undisputed and not so unreasonable as to
 
 *36
 
 be unbelievable, taking into account the factual setting of the claim, the claimant’s testimony generally ought to be accepted as true.”
 
 Westmoreland,
 
 752 So.2d at 449(¶ 15) (citing
 
 White v. Superior Prods., Inc.,
 
 515 So.2d 924, 927 (Miss.1987)). Contradiction exists when there is affirmative evidence to the contrary.
 
 Hedge,
 
 641 So.2d at 11-12, 15. As to the first question — whether a stroke occurred — Guy met her burden by presenting Dr. Clark’s opinion. We find that Dr. Myers’s testimony was insufficient to constitute affirmative evidence to the contrary.
 

 ¶ 26. The supreme court considered this issue in
 
 Hedge,
 
 641 So.2d at 13. There, the claimant presented medical evidence creating a causal connection between her work environment and her respiratory problems.
 
 Id.
 
 at 11. The burden then shifted to the employer to rebut this evidence.
 
 Id.
 
 The supreme court found as follows regarding the testimony of the employer’s medical expert:
 

 The substance of Dr. Jones’[s] medical testimony was that,
 
 it was possible, but not likely,
 
 that there was occupational aggravation in Betty’s case. However, when questioned, Dr. Jones would not affirmatively testify that irritants at Leggett & Platt’s plant
 
 did not
 
 aggravate Betty’s asthma. Instead, he stated that the cause of her condition could not be determined, nor could any particular triggering influence be identified. Consequently, according to Dr. Jones, there was
 
 “insufficient evidence
 
 ” upon which he could base a medical conclusion that Betty’s workplace caused or aggravated her asthma.
 

 Id.
 
 (emphasis added). Because this testimony did not contradict the proof put on by the claimant, the claimant’s evidence remained uncontroverted, thus, satisfying the claimant’s required burden of proof.
 
 Id.
 
 at 11-12.
 

 ¶ 27. Similarly, here, Dr. Myers could not affirmatively state that Guy did not suffer a stroke. He testified that it was possible she had a stroke; however, the evidence was insufficient for him to know for certain. In his deposition, Dr. Myers stated:
 

 Q: My understanding from your testimony is you don’t think she had a stroke?
 

 A: I don’t — my gut feeling is I don’t think she had a stroke, but I am not sure. I could not be sure about seeing a stroke on the MRI scan. I didn’t see what the radiologist was seeing who read the scans for her on those March 24 studies, but there is nothing that I saw about Ms. Guy that told me definitely this woman had a stroke. But there was also nothing about her that told me definitely she did not....
 

 Q: Based on what you just said, it would be — it’s my understanding of your testimony that you cannot say with reasonable medical probability that she did not have a stroke.
 

 A: I cannot say with probability, no. No, it’s just my sense of it is that I don’t believe she had a stroke, but I certainly could be wrong about that.
 

 Because Dr. Myers’s testimony did not affirmatively contradict the evidence presented by Guy that she did in fact have a stroke, her evidence remained uncontro-verted and must be accepted as true.
 

 ¶ 28. As to the second question— whether there is a causal connection between Guy’s injury and her employment— Dr. Myers’s conclusion that Guy’s possible stroke was not work related is also unsupported by substantial evidence. It is clear from the record that Dr. Myers did not have sufficient facts on which to base this opinion. Dr. Myers testified to the following:
 

 
 *37
 
 Q: [C]an you state with reasonable medical certainty that Ms. Guy’s work activities did not contribute to or aggravate her preexisting high blood pressure?
 

 A: I don’t have the history before me of the kind of physical or emotional stress that would tell me, yeah, what’s happening at work is probably creating this high blood pressure problem. This is a real stressful problem. I did not have that history at the time that I saw Ms. Guy.
 

 Q: Okay. So would that answer indicate that you couldn’t state with any certainty that her work activities did not aggravate her high blood pressure?
 

 A: I couldn’t state that with certainty, no.
 

 ¶ 29. Dr. Clark, Guy’s expert witness, definitively stated that Guy’s stressful work environment caused her stroke. Dr. Myers did not contradict that evidence with an affirmative opinion. Because he failed to consider evidence of the stress Guy experienced at work, he was not able to state whether or not that stress contributed to what he referred to as her possible stroke.
 

 ¶ 30. The Commission, in its capacity to weigh competing medical evidence, relied more heavily on the testimony of Dr. Myers because he is a specialist in neurology. However, as part of this Court’s limited review of the Commission’s decision, substantial evidence must exist to support the Commission’s findings. We find that Dr. Myers’s testimony is not based on substantial evidence as he could not state whether or not Guy suffered a stroke or whether or not her possible stroke was caused by the stress she experienced at work. Consequently, Guy met her burden of proof, and such evidence was not affirmatively contradicted by Guaranty Association.
 

 ¶ 31. Therefore, the circuit court erred in affirming the Commission’s denial of workers’ compensation benefits. Accordingly, we reverse the judgment of the circuit court and remand the case back to the Mississippi Workers’ Compensation Commission for a determination of benefits.
 

 ¶ 32. THE JUDGMENT OF THE SCOTT COUNTY CIRCUIT COURT IS REVERSED AND THIS CASE IS REMANDED TO THE MISSISSIPPI WORKERS’ COMPENSATION COMMISSION FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPEL-LEES.
 

 KING, C.J., LEE AND MYERS, P.JJ., IRVING, CHANDLER, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR. BARNES, J., NOT PARTICIPATING.