LEE, C.J.,
dissenting:
¶ 13. The majority finds that there was substantial evidence to support the Commission’s decision. I would find otherwise; thus, I respectfully dissent. Mississippi Code Annotated section 71-3-7(1) (Rev. 2011) states that “compensation shall be payable for disability ... arising out of and in the course of employment, without regard to fault as to the cause of the injury or occupational disease.” But an injury “shall be deemed to arise out of and in the course of employment when there is evidence that there is a direct causal connection between the work performed and the [injury].” Id. The majority concludes there was no causal connection between Huey’s employment and his injury.
¶ 14. A special rule applies to traveling employees such as Huey. “The traveling employee differs from the ordinary commuter, and by virtue of [his] employment [is] exposed to greater risks than those encountered by the traveling populace. Therefore, a traveling employee’s travel is deemed a work-related risk.” King v. Norrell Servs., Inc., 820 So.2d 692, 694 (¶ 6) (Miss.Ct.App.2000). A traveling employee remains in the course of employment from the time he leaves home on a business trip until he returns, and the employment covers both the time and the place of travel, except in “deviation” cases or when the employee is on a personal mission or errand. Bryan Bros. Packing Co. v. Dependents of Murrah, 234 Miss. 494, 500, 106 So.2d 675, 677 (1958). To constitute a deviation, the employee’s personal activity must equate to an abandonment. Estate of Brown ex rel. Brown v. *1150 Pearl River Valley Opportunity, Inc., 627 So.2d 308, 311 (Miss.1993).
¶ 15. The AJ found that Huey “abandoned his trip to engage in an altercation ■with the BMW driver.” And that Huey “had brought the van to a stop in the right hand lane of a busy interstate and was exiting the van when struck” by the eighteen-wheeler truck. Ultimately, the AJ determined Huey “chose to place himself in that position rather than continue on his way to his destination,” and his “injuries occurred because his van was no longer moving toward that destination as directed by his employer.” The AJ did admit that it was “difficult to understand exactly what [Huey and Crawley] contend did in fact happen. As such, the ... unbiased testimony of Trooper Wilson is the best account of what occurred.” However, Trooper Wilson, who was not the first responder on the scene, testified that there were two accidents — Huey rear — ended Crawley, and the eighteen-wheeler then hit Huey — but the testimony does not support this conclusion.
¶ 16. The testimony shows that Huey was attempting to change lanes on the interstate and almost hit Crawley’s BMW. Crawley ran off the road and, once he regained control, began to pursue Huey. Crawley pulled in front of Huey, and both cars began to slow down. Before Huey could exit his van to see what Crawley wanted, Huey was hit from behind by an eighteen-wheeler. Huey’s van then rear-ended Crawley’s BMW. One could easily find that if in fact Huey’s van collided with Crawley’s BMW, it very well could have been the result of Huey’s van being slammed into by the eighteen-wheeler and being pushed into Crawley’s BMW. Huey was in his van behind Crawley when he was rear-ended. Huey had not exited his van but had taken off his seatbelt. It is only speculation that he was participating in a “road rage” incident with Crawley. In fact, Huey testified that he was stopping behind the BMW thinking the driver might be a woman in need of assistance. As he stated, he could not identify the driver. Regardless, the facts are that Huey was inside his van when he was hit by the eighteen-wheeler. Huey never left the roadway that was the direct route to his destination, as required by his employer. Perhaps if Huey had exited on a side road and injected himself into a situation with Crawley that was not connected with or in the furtherance of his employer’s business; I could agree with the majority. He did not, and I cannot.
¶ 17. “When the testimony is undisputed and not so unreasonable as to be unbelievable, taking into account the factual setting of the claim, the claimant’s testimony generally ought to be accepted as true.” Westmoreland v. Landmark Furniture, Inc., 752 So.2d 444, 449 (¶ 15) (Miss.Ct.App.1999) (citation omitted). “Contradiction exists when there is affirmative evidence to the contrary.” Guy v. B.C. Rogers Processors, Inc., 16 So.3d 29, 36 (¶ 25) (Miss.Ct.App.2008). Although Trooper Wilson said Huey and Crawley admitted to him they were driving aggressively, I do not find Huey’s testimony so unreasonable that his version of events was necessarily untrue. Furthermore, I do not find RGIS has provided affirmative evidence that fully contradicts Huey’s testimony. Finding the Commission’s decision was not based on substantial evidence, I would reverse the Commission’s decision.